UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DENNIS AVERY, KEVIN KELLY and**
**DAVID I. MEISELMAN, on behalf of**
themselves and all others similarly situated,

        **Plaintiffs,**

vs.                                           Case No. 8:02-CV-2238-T-27MAP

**UNIROYAL TECHNOLOGY CORP.,**
**GEORGE J. ZULANAS, JR., ROBERT**
**L. SORAN and HOWARD R. CURD,**

        **Defendants.**
_____/

## ORDER

**BEFORE THE COURT** is Plaintiffs' Motion for Class Certification (Dkt. 111), the individual Defendants' Memorandum of Law in Opposition (Dkt. 124), and Plaintiffs' Reply (Dkt. 131). Upon consideration and after hearing oral argument on April 25, 2005, Plaintiffs' Motion for Class Certification is GRANTED.

Plaintiffs, former shareholders of Sterling Semicoductor, Inc., a privately held corporation, allege that Defendants Zulanas, Soran and Curd, in connection with the acquisition of Sterling by Uniroyal Technology Corp., misrepresented and failed to disclose material facts relating to the business, products and future prospects of Uniroyal.[1] (Dkt. 1, pp. 1-2). Plaintiffs allege that Defendants disseminated a continuing stream of false and misleading statements which artificially

---

[1] The case is stayed as to Uniroyal pursuant to Chapter 11 of the Bankruptcy Code. (Dkts.11, 22)

1

inflated the price of Uniroyal stock prior to the merger of the two companies. (Dkt. 1, pp. 11-16).[2]

Plaintiffs also allege that Defendants made materially false and misleading statements in the Proxy, which was issued to Sterling shareholders on April 28, 2000 for the purpose of soliciting votes in support of the merger. (Dkt. 1, p. 16). According to Plaintiffs, "[t]he false and misleading statements of material fact [ ] caused Sterling shareholders to vote in favor of the merger and also artificially inflated the price of Uniroyal common stock." (Dkt. 1, p. 2).[3] The shareholders met and voted in favor of the merger on May 30, 2000. (Dkt. 1, pp. 4-5). "As a result, Plaintiffs and other Sterling shareholders paid too much for their Uniroyal shares, which were exchanged for and replaced their Sterling shares . . ." *Id.*[4] Based on these allegations, Plaintiffs allege Defendants are liable under § 10(b) and § 20(a) of the Securities Act of 1934.

Plaintiffs move for class certification, pursuant to Rule 23(a) and Rule 23(b)(3), Federal Rules of Civil Procedure, on behalf of "all former Sterling shareholders and the former holders of

---

[2] Plaintiffs allege that Defendants' statements were "designed to create and did create an artificially inflated price for Uniroyal's common stock. Accordingly, by the time the Merger was negotiated Uniroyal's shares were trading far above their true market value." (Dkt. 1, p. 14, ¶ 31).

[3] Plaintiffs allege that "[i]n ignorance of the fact that the market price of Uniroyal's shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Defendants, or upon the integrity of the market in which the securities traded, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants, the Plaintiffs and other members of the Class acquired Uniroyal common stock at artificially high prices and were damaged thereby." (Dkt. 1, p. 33)

[4] According to Plaintiffs, via the Merger Agreement executed on April 10, 2000, the parties agreed that "[t]he securities to be exchanged were restricted Uniroyal common in exchange for Sterling common, Sterling preferred, Sterling warrants, Sterling options and certain claims or rights held by key employees of Sterling. At a ratio of 1.1981, Sterling stock was valued at approximately $28.00/share." (Dkt. 1, p. 10). "Options held by Sterling employees were to be cancelled and replaced with options to purchase Uniroyal common stock." *Id.* "Shares of Uniroyal stock offered to Sterling shareholders were not registered and as such, were classified as 'restricted securities.'" (Dkt. 1, p. 11). "Uniroyal agreed to register those shares with the SEC in connection with the Merger not later than 5 business days after the consummation of the Merger." *Id.*

Sterling options and warrants, who acquired Uniroyal common stock, pursuant to the Proxy, Prospectus and Registration Statement in connection with the closing of the Merger Agreement . . .". (Dkt. 112, p.1). Defendants contest class certification on various grounds.

## **Applicable Standards**

In order to obtain class certification, Plaintiffs must show that the four prerequisites of Rule 23(a) are met and that one of the provisions of Rule 23(b) applies. *See* Fed.R.Civ.P. 23; *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721 (11th Cir. 1987). Rule 23(a) requires the proposed class representatives demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable (numerosity);
>
> (2) there are questions of law or fact common to the class (commonality);
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and
>
> (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation).

*See* Fed.R.Civ.P. 23(a).

In addition, because Plaintiffs seek class certification under Rule 23(b)(3), the Court must find that (1) the questions of law or fact common to the members of the class predominate over those questions affecting individual members only, and (2) that a class action is superior to other available

methods for the fair and efficient adjudication of the controversy. *See* Fed.R.Civ.P. 23(b)(3)[5]; *Kirkpatrick*, 827 F.2d at 721.

The merits of Plaintiffs' claims are not to be evaluated when determining whether the requirements of Rule 23 have been satisfied. *Kirkpatrick*, 827 F.2d at 722. However, a court "may look beyond the allegations of the complaint in determining whether a motion for class certification should be granted." *Kirkpatrick*, 827 F.2d at 722. "It is necessary to analyze the plaintiffs' factual allegations, the record evidence pertinent to class action issues, and the applicable law in order to understand and evaluate the propriety of the class action device . . ." *Anderson v. Bank of the South, N.A.*, 118 F.R.D. 136, 138 (M.D. Fla. 1987); *see also Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984) (stating that the limitation on examining the merits "should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements"). Although securities actions are particularly appropriate for class action treatment, the motion for class action certification must nevertheless be subject to rigorous scrutiny to insure that the requirements of Rule 23 are satisfied. *See General Telephone Co. of the Southwest v.*

---

[5] Rule 23(b)(3) provides:
(b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Falcon*, 457 U.S.C. 147, 161 (1982).

## Discussion

Defendants contend class certification is inappropriate because Plaintiffs fail to establish three of the four prerequisites required by Rule 23(a): commonality, typicality and adequacy of representation. Additionally, Defendants argue Rule 23(b)(3) does not apply because individual issues concerning reliance predominate.[6]

### 1.  **Prerequisites of Rule 23(a)**

#### *Numerosity*

Plaintiffs must first establish that the proposed class is so numerous that joinder is impracticable. In order to satisfy this requirement, Plaintiffs need not allege the exact number and identity of the class members, but must only establish that joinder is impracticable through some evidence or reasonable estimate of the number of purported class members. *See In re Amerifirst Securities Litigation*, 139 F.R.D. 423, 427-28 (S.D. Fla. 1991).

Plaintiffs assert the class consists of approximately 150 persons. While Defendants disagree on the number of eligible class members and the appropriate breadth of the class, they do not dispute that the numerosity element is met. Accordingly, the Court determines that Plaintiffs have satisfied the numerosity requirement. *See Cox v. Am. Cast Iron Pipe Co*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors") (quotations and citations omitted).

---

[6] There is considerable overlap among Rule 23(a)'s commonality, typicality and adequacy of representation requirements and Rule 23(b)'s predominance requirement. *See e.g. In re Amerifirst Securities Litigation*, 139 F.R.D. 423, 429 n. 2 (S.D. Fla. 1991).

*Commonality*

The commonality prerequisite requires that Plaintiffs assert common questions of law or fact. *See* Fed.R.Civ.P. 23(a). Generally, commonality is met where at least one legal issue is shared by all class members. *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 488 (S.D. Fla. 2003) (citing *Stewart v. Winter*, 669 F.2d 328 (5th Cir. 1982)).

Plaintiffs contend commonality exists because their claims arise out of the common allegation that "[D]efendants, in a series of public statements and documents issued during the class period[,] misrepresented and failed to disclose material facts concerning the company's revenues and financial condition" which in turn, artificially inflated stock prices and mislead the proposed class. (Dkt. 112, p. 10).[7] This Court agrees.

Generally, where plaintiffs allege that the action is a result of a unified scheme to defraud investors, the element of commonality is met. *See e.g. Cheney*, 213 F.R.D. at 491 (although commonality element was not disputed, the prerequisite was met where plaintiffs alleged defendants "perpetrated a massive fraudulent scheme against investors through uniform misrepresentations and omissions in filings made with the SEC, in [ ] press releases, and in other documents"); *Walco Invest. v. Thenana*, 168 F.R.D. 315, 325 (S.D. Fla. 1996) (where plaintiffs allege defendants

---

[7] Plaintiffs contend the following common issues of fact and law exist:

(a) whether documents, press release and other statements disseminated to Sterling shareholders or reviewed and approved by the Defendants during the Class Period misrepresented or were otherwise misleading with respect to material facts about the business, future earnings, production capabilities and financial condition of Uniroyal; (b) whether [D]efendants acted knowing or recklessly in omitting and/or misrepresenting material facts; (c) whether the market price of Uniroyal shares during the Class Period was influenced by the Defendants' failure to correct the misleading and material misrepresentations complained of herein; (d) whether members of the Class have been damaged and if so, the proper measure thereof.

(Dkt. 112, p. 10).

participated in a unified scheme to defraud investors, commonality is met ); *see also Kennedy v. Tallant,* 710 F.2d 711, 718 (11th Cir. 1983) (affirming certification of class, specifically the court's finding of typicality, where complaint alleged defendants "entered into an unlawful conspiracy to defraud Georgia citizens through PLC stock offerings").

While it may be true, as argued by Defendants, that the Plaintiffs lack a common factual link with regard to reliance issues, this alone is insufficient to destroy the commonality requirement. "The threshold for commonality is not high" *Cheney*, 213 F.R.D. at 490 (citing *Forbush v. J.C. Penney*, 994 F.2d 1101, 1106 (5th Cir. 1993)). The commonality prerequisite does not require that *all* of the questions of law or fact raised by the case be common to all the plaintiffs. *See Cox v. American Case Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986), *cert. denied*, 479 U.S. 883, 177-178 (1986). Accordingly, Plaintiffs satisfy the commonality prerequisite.

*Typicality*

Rule 23(a) requires that the Plaintiffs present claims that are typical of the claims of the class. *See Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); Fed.R.Civ.P. 23(a). "A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Cheney*, 213 F.R.D. at 491 (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). "[T]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Appleyard,* 754 F.2d at 958. "Any atypicality or conflict between the named Plaintiffs' claims and those of the [c]lass 'must be clear and must be such that the interests of the class are placed in significant jeopardy.'" *Cheney*, 213 F.R.D. at 491 (citing *Walco Investments*, 168 F.R.D. at 326) (quoting *Sley v. Jamaica Water &*

*Utilities, Inc.*, 77 F.R.D. 391, 394-95 (E.D. Pa. 1977)); *see also Kornberg*, 741 F.2d at 1337 ("[a] factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class").

Here, Plaintiffs Avery, Kelly and Meiselman allege that they acquired Uniroyal securities during the Class Period pursuant to the merger with Sterling and sustained damages due to Defendants' material misrepresentations and omission made in the company's public statements and Proxy. Like other members of the class, Avery, Kelly and Meiselman allege that they voted in favor of the merger and exchanged their Sterling shares based on the price set forth in the Merger Agreement. They allege that the price agreed upon in connection with the merger was based on an artificially inflated price due to Defendants' misrepresentations and omissions.

While Defendants contend that Plaintiffs did not rely on the integrity of the market in acquiring Uniroyal stock, the Complaint expressly alleges that they did. (Dkt. 1, p. 33). Nonetheless, even if Defendants are correct in arguing that "the named [P]laintiffs may not be entitled to a presumption of reliance based on the fraud on the market theory should Defendants ultimately prove that 'price played *no* part whatsoever in their decision making,'" this is a question of fact which cannot be resolved at this stage of the proceedings. *See Amerifirst*, 139 F.R.D. at 428-29 (citing *Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D. Pa. 1989)).[8] Moreover, "the possibility that a unique defense exists against [certain Plaintiffs] does not necessarily foreclose class certification." *Amerifirst*, 139 F.R.D. at 428-29 (citing *Appleyard*, 754 F.2d at 958).

In this Circuit, where Defendants have committed "the same unlawful acts in the same method against an entire class" "[t]he degree of investment experience or sophistication of each of

---

[8] Application of the "fraud on the market" presumption is discussed in more detail *infra*.

the class members is irrelevant[]" and will not preclude satisfaction of the typicality requirement. *Kennedy*, 710 F.2d at 717 (citing *Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680 (5th Cir. 1971)). Likewise, "the degree of reliance placed on the prospectuses by the various class members is not a controlling element of the action." *Kennedy*, 710 F.2d at 717 (citing *Shores v. Sklar*, 647 F.2d 462 (5th Cir. 1981) (en banc), *cert. denied*, 459 U.S. 1102 (1983)). Defendants' argument that typicality fails because Avery, Kelly, and Meiselman had superior investment experience and either relied on "inside information" or the representations of Richard Rahn are not, therefore, persuasive.

  Defendants also contend the class lacks typicality because the legal theories of the named Plaintiffs potentially conflict with other class members and because the class is overbroad. Defendants submit that the conflict pertains to (1) persons with non liquid Sterling warrants who, by cashless conversion, got a bonus of Uniroyal stock; and (2) key Sterling employees who negotiated lucrative employment agreements in addition to exchanging their Sterling stock for Uniroyal stock.[9] Alternatively, Defendants argue the class is overbroad because it includes "insiders" to the Merger process, such as (1) members of Sterling's Board; (2) entities which owed Sterling stock in 2000 but were controlled by Sterling's directors (3) investment banker Carlos Valeiras along with principals of Wallace Willmore Cromwell & Co. and (4) the shareholder employees who negotiated lucrative employment agreements with Uniroyal. (Dkt. 124, pp. 5-7). Defendants also argue the class is overbroad because it includes shareholders who were not in privity with John Head, the attorney who signed the tolling agreement. According to Defendants, those

---

[9] The potential conflict between class members is also discussed *infra* in connection with the "adequacy of representation" element.

9

shareholders' claims are barred by the statute of limitations. (Dkt. 124, p. 7).

This Court construes Defendants' arguments as potential defenses which may affect an individual class member's damages or ultimate right to recover, but do not affect the presentation of the case on the liability issues for the class as a whole. "The possibility that a unique defense exists against [certain Plaintiffs] does not necessarily foreclose class certification." *Amerifirst*, 139 F.R.D. at 428-29 (citing *Appleyard*, 754 F.2d at 958). "Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Smilow v. Soutwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) (citing *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 924 (3d Cir. 1992) ("[g]iven a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations has not prevented certification of class actions in securities cases"); *see also Kennedy*, 710 F.2d at 718 (if some of the prospective class members are "threatened with a potential statute of limitations defense, that problem would not necessarily defeat the availability of a class action suit"). "Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Smilow*, 323 F.3d at 40 (citations omitted).

Moreover, if Defendants' defenses are later shown to bar the claims of some class members, adequate procedural mechanisms are available to the Court, such as designating other class representatives, reserving the right to create subclasses; excluding members from the class at a later juncture or decertifying the class. *See Smilow*, 323 F.3d at 39-40. Accordingly, for the purpose of class certification, the typicality element is met.

10

*Adequacy of Representation*

Adequate class representation is established by demonstrating that the class representatives "will fairly and adequately protect the interest of the class." Fed.R.Civ.P. 23(a)(4); *Kirkpatrick*, 827 F.2d at 726. Generally, the adequacy of representation depends on two factors: (1) the named Plaintiffs must appear to be able to prosecute the action vigorously through qualified, experienced and competent counsel, and (2) the named Plaintiffs must not have interests antagonistic to those of the class. *Kirkpatrick*, 826 F.2d at 726.

(a) Representation

Defendants contend the named Plaintiffs are inadequate representatives of the class because "none of them can identify any of the specifics of the alleged fraud, including [Uniroyal's] alleged misrepresentations upon which they relied, and none of them relied on the status of [Uniroyal's] operations." (Dkt. 124, p. 16). Defendants contend that because the "fraud on the market" theory does not apply, Plaintiffs are required to prove individualized issues and cannot rely exclusively on counsel to prove their securities fraud claim for them. This Court disagrees.

"The law does not require that [the named Plaintiffs] understand the details and means by which the Defendants perpetrated the alleged fraud." *In re Ins. Mgmt. Solutions Group, Inc. Sec. Litig.*, 206 F.R.D. 514, 517 (M.D. Fla. 2002) (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-74 (1966)). The named Plaintiffs have demonstrated that at a minimum they are as knowledgeable about the class claims and alleged fraud as the plaintiff in *Surowitz,* who was deemed adequate by the United States Supreme Court. *See Surowitz*, 383 U.S. at 366 (plaintiff deemed adequate representative even though she spoke limited English, did not understand the complaint and knew what the lawsuit was about only to a "very small degree"). While the Court finds some of the

testimony by the named Plaintiffs potentially problematic, overall they have sufficient knowledge of the facts of the case. The Court is not persuaded that they would not adequately pursue prosecution of the action.

      (b)      Antagonistic Interests

Defendants also contend the named Plaintiffs are not adequate representatives because there are potential antagonistic interests between the named Plaintiffs and proposed class members. Defendants argue intra-class conflicts exist because "Sterling option and warrant holders gained a net benefit from the merger when the options/warrants were automatically exercised through the merger and converted into Uniroyal stock" and other "shareholders who were also employees and negotiated lucrative employment agreements at a time when Sterling was starved for cash" ultimately benefitted from the merger. (Dkt. 124, p. 18).

For purposes of determining adequate representation, "antagonistic interests are not only those which directly oppose one another, but also are those which may be hostile to one another or unharmonious such that one party's interest may be sacrificed for another's . . ." *In re Healthsouth Corp. Sec. Litigation*, 213 F.R.D. 447, 461-62 (N.D. Ala. 2003) (citations omitted). However, "the existence of minor conflicts alone will not defeat a party's claim to class certification; the conflict must be a 'fundamental' one going to the specific issues in controversy." *Valley Drug Company*, 350 F.3d 1181, 1189 (11th Cir. 2003). "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Id.*; *see also Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000). "[The] plaintiffs bear the burden of proof on this issue just like all other issues raised in connection with the motion for class certification." *Healthsouth.* 213 F.R.D. at 461-62.

Here, Defendants allege that certain putative class members, the Sterling option and warrant holders and the employees who allegedly negotiated lucrative employment agreements, actually benefitted from the merger, "regardless of any misrepresentation". (Dkt. 124, p. 18). Defendants argue that this presents a conflict with the Plaintiffs who claim they were damaged as a result of the merger. While there may be putative class members who benefitted from the merger, Defendants have not sufficiently established that a "fundamental" conflict exists. In this respect, they have not established that Sterling option and warrant holders and the employees who negotiated lucrative employment agreements benefitted from "the same conduct" which allegedly harmed the Plaintiffs, that is, Defendants' alleged misrepresentations and omissions.

Further, Defendants have not established that those class members who allegedly benefitted from the merger did so *to the detriment* of other class members. Accordingly, this Court cannot conclude that the named Plaintiffs' interests are antagonistic to or in conflict with the objectives of the class members they purport to represent. Likewise, the Court cannot conclude that this action poses "the occasional extreme case where a conflict . . . is too great and simply dominates the landscape too completely to ignore . . ." *Healthsouth*, 213 F.R.D. at 463 (citations omitted). Plaintiffs, therefore, have established that they are adequate representatives of the class and have met the prerequisites of Rule 23(a).

    **2.**    **The Predominance Requirement  - Rule 23(b)**

Defendants argue class certification is inappropriate in this case, even if the four requirements of Rule 23(a) are met, because individual issues predominate with respect to the essential element of reliance.  Specifically, Defendants allege that not all shareholders relied on representations regarding Uniroyal's products and future prospects when determining whether to vote in favor of the

13

merger with Uniroyal. Defendants contend other motivating factors existed such as Sterling's need for capital and its desire to obtain liquidity for its investors. Additionally, Defendants argue that it should not be inferred that all Sterling shareholders reviewed the Proxy, pointing out that the named Plaintiffs themselves testified that they do not recall reading or relying on the Proxy. In response, Plaintiffs contend they are entitled to the "fraud on the market" presumption of reliance and therefore individualized issues regarding reliance do not predominate.

Proof of reliance is an essential element of a Rule 10b-5 action as it "establishes a causal link between the defendant's activities and the plaintiff's injuries and prevents federal securities law from affording unlimited liability." *Ross v. Bank South, N.A.*, 885 F.2d 723, 728 (11th Cir. 1989) (en banc), *cert. denied*, 495 U.S. 905 (1990). While recovery under the federal securities laws generally requires a showing of actual reliance on the alleged misrepresentation or omission, courts have recognized a presumption of reliance in certain circumstances. For example, where plaintiffs demonstrate that they relied on the integrity of the market in purchasing or selling securities in an open and developed market, they need not establish that they relied on specific misrepresentations. *Kirkpatrick*, 827 F.2d at 722.

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements. . . . The casual connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentation.

*Basic v. Levinson*, 485 U.S. 224, 241-42 (1988).[10]

The Eleventh Circuit has, as has many Circuits, accepted the fraud on the market theory. *See e.g. Lipton v. Documentation, Inc.*, 734 F.2d 740, 746-47 (11th Cir. 1984) ("the fraud on the market theory finds its greatest justification when applied to class actions alleging fraudulent misrepresentations or omissions that affected security prices on a developed open market"). To invoke the presumption, a plaintiff must show that the stock traded on an efficient market and that the misrepresentations artificially inflated the price of the stock. *See In re Checkers Sec. Litig.*, 858 F.Supp. 1168, 1177 (M.D. Fla. 1994). Once the presumption is established, the burden shifts to defendant to provide evidence rebutting the presumption. *Id.*[11]

It is undisputed that Plaintiffs did not purchase stocks on an open market. However, "[t]he important fact is not whether the securities where bought on the primary or secondary market, but whether the securities were actively traded so that the market price would be influenced by the available information." *Lipton v. Documation Inc.*, 734 F.2d 740, 746 n. 8 (11th Cir. 1984). During the relevant time period, Uniroyal shares were actively traded on NASDAQ and there was an

---

[10] Two assumptions underlie the liability aspect of the fraud-on-the-market theory:
(1) the efficient market hypothesis, which posits that in a free and actively traded market, stock prices reflect all available information about a corporation and, thus, a stock's price is the best estimate of the company's intrinsic value, and (2) the average investor does not need to read and review available information because he relies on the integrity of the market price in securities transactions, i.e. he relies on the premise that the market price is validly set.

*Anderson*, 118 F.R.D. at 143.

[11] At this stage of the proceeding, the Court is concerned only with the applicability of the presumption for purposes of determining whether the class certification elements of Rule 23 are met.

efficient market for Uniroyal shares.[12] This Court agrees with Plaintiffs that this case, in which Uniroyal common stock was traded on the NASDAQ, is distinguishable from cases such as *Camden v. Asset Mgmt., L.P. v. Sunbeam Corp.*, 2001 WL 34556527 (S.D. Fla. 2001), which involved an initial offering of debentures sold only to certain qualified buyers and investors. Those debentures were never registered on a secondary market and accordingly, the "fraud on the market" presumption was not warranted in that circumstance.

Here, the terms of the merger established the value of the Sterling stock exchanged for Uniroyal stock. That value was determined based on the average closing price of Uniroyal stock on the NASDAQ for the ten days prior to the day the Merger Agreement was signed. Plaintiffs allege that Defendants disseminated false and misleading statements which artificially inflated the stock prior to the merger and that Sterling's shareholders would not have agreed to exchange their Sterling shares for Uniroyal shares at the rate offered, if they had known the truth about Uniroyal.

Plaintiffs' plausible contention, consistent with the fraud on the market theory, is that Sterling's shareholders should have been able to rely on the integrity of the market price of Uniroyal stock, as determined by the ten day average closing price, when voting in favor of the merger and agreeing to exchange their Sterling shares for Uniroyal shares, notwithstanding that Sterling stock was not publically traded.

While the Court is permitted to look beyond the allegations of the Complaint in a limited manner, in doing so the Court should not delve into the merits of Plaintiffs' proof of reliance or assess Plaintiffs' likelihood of success on their claims. "[R]ejection of the fraud on the market

---

[12] Defendants do not dispute these facts. Rather, Defendants contend the presumption of reliance should not apply because Plaintiffs did not purchase their shares on a open market.

theory based upon nothing other than the court's assessment of the plaintiff's likelihood of success on the claims is an improper basis for deciding the propriety of a class action." *Kirkpatrick*, 827 F.2d at 723. As Plaintiff correctly points out, the fraud on the market presumption has been applied where, like the Plaintiffs here, shareholders acquire shares of stock as a result of a merger. *See e.g. Theiman v. OHSL Fin. Corp.*, 2001 WL 34142349 (S.D. Ohio 2001) (recognizing that plaintiffs who acquired stock pursuant to a merger of two companies may be entitled to the fraud on the market presumption); *In re First Republic Bank Securities Litigation*, 1989 WL 108795 (N.D. Tex. 1989) (certifying class including persons who received shares in connection with a merger because class could rely on fraud on the market presumption for alleged failure to disclose).

At this stage of the proceedings, the Court cannot conclude that the Uniroyal stock price played no part in the Plaintiffs' decision to approve the merger or that the "fraud on the market" theory does not apply.[13] Plaintiffs allegations concerning the "fraud on the market" theory are sufficient for class action purposes. Individualized issues of reliance do not, therefore, predominate.

Finally, although not in dispute, a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The requirements of Rule 23(b)(3) are, therefore, met.

Accordingly, it is

**ORDERED AND ADJUDGED**:

(1) Plaintiffs' Motion for Class Certification (Dkt. 111) is GRANTED.

(2) The class certified is:

---

[13] Resolution of whether the "fraud on the market" presumption is available to Plaintiffs and whether Defendants can rebut the presumption is better suited for a dispositive motion.

ALL FORMER STERLING SHAREHOLDERS AND THE FORMER HOLDERS OF STERLING OPTIONS ANS WARRANTS, WHO ACQUIRED UNIROYAL COMMON STOCK, PURSUANT TO THE PROXY, PROSPECTUS AND REGISTRATION STATEMENT IN CONNECTION WITH THE CLOSING OF THE MERGER AGREEMENT, EXCEPT DEFENDANTS, MEMBERS OF THE IMMEDIATE FAMILIES TO THE DEFENDANTS AND ANY AFFILIATE OF ANY DEFENDANT.[14]

(3)   Plaintiffs Dennis Avery, Kevin Kelly and David Meiselman are appointed Class Representatives. Cohen, Milstein, Hausfeld & Toll, P.L.L.C. is appointed Lead Class Counsel and The Alpert Law Firm is appointed Liaison Class Counsel.

(4)   Plaintiffs' Counsel shall file a motion to approve class notice, including a proposed notice in compliance with Fed.R.Civ.P. 23(c)(2)(B) within twenty days from the date of this Order.

**DONE AND ORDERED** in chambers this 19th day of May, 2005.

/s/James D. Whittemore
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

---

[14] If necessary the Court may modify this definition pursuant to Fed.R.Civ.P. 23(c)(1)(C).